GAUDIN, Judge.
This is an appeal by the surviving wife and children of Melvin R. Guidry, who died of severe coronary artery disease several hours after his chest pains had been wrongfully diagnosed as a muscle strain by a physician in East Jefferson General Hospital’s emergency room.
Appellants filed a tort suit in the 24th Judicial District Court. Among the named defendants was East Jefferson Emergency Consultants (EJEC), an unincorporated association of emergency room physicians formed primarily for billing and collection purposes. The doctor who saw Mr. Guidry, Dr. Michael Federline, was a member of *399 EJEC, as were all other physicians who worked in the hospital’s emergency room.
EJEC filed a motion for summary judgment as did the plaintiffs. The trial judge granted EJEC’s motion and denied that of Mrs. Guidry and her children. For the following reasons, we reverse the decree in favor of EJEC and affirm the judgment denying the Guidry motion. We remand for further proceedings.
EJEC’s motion contended (1) that there were no genuine issues of fact concerning its vicarious liability and (2) that the name EJEC was for convenience only. The Gui-dry motion asked the trial judge to summarily hold and/or find that EJEC was in fact a legal partnership capable of being sued.
Prior to and into 1983, the hospital handled emergency room billing for the seven or eight emergency room doctors. In late 1983, the hospital advised the individual emergency room physicians that it would no longer handle billing and that the emergency room doctors would have to seek an outside agency for this service.
Dr. Raul B. Guevara, whose deposition is in evidence, was one of the emergency room physicians. He is also, he said, the spokesman for and designated leader of the group. Dr. Guevara stated that he and the other doctors “looked around” and found a company doing emergency room billing, Medical Associates, Inc.
Medical Associates wished to deal with one person rather than with several, Dr. Guevara said, so EJEC was formed for that sole and limited purpose. EJEC had no capital, no insurance, no employees and it was not formed for the purpose of practicing medicine.
Dr. Guevara explained the emergency room billing and pay-out procedures. All monies were collected by Medical Associates and distributed to the individual physicians strictly on a per hour worked basis. Fees were not shared equally. Before distributing proceeds, Medical Associates would deduct its fee for services rendered.
In the record is a copy of the agreement (signed by the doctors) which formed EJEC in 1983. It is quite clear that EJEC was designed only “... to deal with Medical Associates, Inc.” The agreement prohibits members from using the name (EJEC) to incur indebtedness or to assume any liability. The agreement states explicitly that is not intended to create either a corporate relationship, a partnership or an association for profit between and among the members.
Standing alone, the 1983 agreement would strongly suggest that EJEC couldn’t be sued because of the alleged medical malpractice of one of its members. In the record, however, is a January 1, 1985 contract entered into by EJEC and East Jefferson General Hospital whereby EJEC, represented by its president, Dr. Guevara, agreed to provide qualified physicians for the hospital’s emergency room. This appears to be a purpose or function beyond that of “dealing with Medical Associates.”
Dr. Guevara said that the 1985 contract was in effect until December, 1988. The hospital then advised EJEC, Dr. Guevara stated, that the contract had to be renegotiated; but as of the date of Dr. Guevara’s deposition (May 9, 1989), a new contract had not been executed.
In any event, the 1985 contract between EJEC and the hospital covered such subjects as the appointment of a department chairman, the employment of non-physician personnel, educational programs, hospital rules and regulations, etc.
When the motions were heard, various documents, including Dr. Guevara’s deposition and EJEC’s 1983 and 1985 agreements, were placed in evidence. There was no live testimony. As the record now stands, devoid of any other testimony and evidence, it is difficult to ascertain EJEC’s exact legal status, particularly in the wake of the 1985 contract.
In Louisiana, there are two kinds of persons: natural persons and juridical persons. See LSA-C.C. art. 24. A juridical person is an entity with a personality distinct from its members. Different juridical entities have different legal precepts concerning tort liability of individual members.
We are not unmindful of Ermert v. Hartford Ins. Co., 559 So.2d 467 (La.1990), wherein the Supreme Court of Louisiana *400 discussed at length legal principals applicable to juridical entities and found individual members of an unincorporated hunting club not liable in tort for injuries sustained by a person accidentally shot in the foot by a member of the hunting group. The facts of Ermert, however, are not synonymous with those of the case now before us. There were no written documents binding together for any purpose the members of the hunting club.
We are certainly not saying that EJEC or any of the individual EJEC members is responsible for Dr. Federline’s alleged tort. Only Dr. Federline was present when Mr. Guidry was in the emergency room and it is clear that there was no profit-sharing agreement by and between EJEC members. However, sufficient proof was not presented to resolve all material issues related to EJEC’s legal status; therefore, summary judgment dismissing EJEC was not appropriate.
Likewise, there was not adequate proof to show that EJEC was in fact a partnership that could be sued. The trial judge correctly denied the Guidry motion.
Concluding, we reverse and set aside the judgment granting EJEC’s motion for summary judgment and we affirm the judgment denying the Guidrys’ motion for summary judgment. We remand for further proceedings, with each party to bear its costs of this appeal.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.